(31 Misc. Rep. 445.)

## In re NEW YORK JUVENILE ASYLUM.

(Supreme Court, Special Term, New York County. May, 1900.)

CHARITIES—CERTIFICATE OF COMMISSIONER OF PUBLIC CHARITIES—PAYMENT FROM CITY—MANDAMUS.

Laws 1897, c. 378, § 230, subd. 14 (Greater New York Charter), directs the board of estimate and apportionment to include in its final annual estimate $110 for the New York Juvenile Asylum for each child which shall be intrusted or committed to it. Const. art. 8, § 14, provides that payment shall not be made for any inmate in such institution who was not received and retained pursuant to the rules established by the state board of charities; and Greater New York Charter, § 661, declares that no payment shall be made by the city, except on a certificate of the commissioner of charities that such child has been received and retained by the institution pursuant to the rules and regulations established by the state board of charities. *Held*, that the New York Juvenile Asylum is entitled to have the commissioner of public charities for the borough to certify that it has complied with the rules and regulations of the state board of charities in the reception and retention of children which had been voluntarily surrendered to it by their respective parents by instruments in writing duly executed in accordance with its charter, where it had received no notice in writing from the state board of charities, as provided by its rules, that the children should be returned to their parents or be placed out in homes.

Mandamus by the people, on relation of the New York Juvenile Asylum, against the commissioner of public charities. Granted.

Goeller, Shaffer & Eisler, for relator.

John Whalen, Corp. Counsel, for respondent.

LEVENTRITT, J. The relator asks for a writ of mandamus compelling the commissioner of public charities for this borough to certify that it has complied with the rules and regulations of the state board of charities in the reception and retention of four children, voluntarily surrendered to it by their respective parents by duly-executed instruments in writing. It has been stipulated that these four children were not surrendered or intrusted to the relator on the ground of destitution. The immediate question here to be determined is whether, under the constitution and existing legislation, the relator is entitled to payment by the municipality for children voluntarily surrendered or intrusted to it on grounds other than that of destitution.

The relator was incorporated by act of the legislature of this state (chapter 332) on June 30, 1851. By section 2 of its charter (as amended by chapter 387, Laws 1854), the purposes of incorporation were thus stated:

"The objects of this corporation are to receive and take charge of such children, between the ages of seven and fourteen years, as may be voluntarily entrusted to them by their parents or guardians or committed to their charge by competent authority, and provide for their support, and to afford them the means of moral, intellectual and industrial education."

Section 7 makes more specific provision as to what children may be received into the relator's care and management, and provides for four classes:

"(1) Such children as by the consent, in writing, of their parents and guardians, shall be voluntarily surrendered and entrusted to it; (2) such children as may be committed to it by order of any magistrate or magistrates of the city and county of New York, under the ninth section of this act; (3) truant children who may be committed to its charge by the order of any magistrate or magistrates under the thirteenth section of this act; (4) children deserting their homes or disobedient to their parents or guardians, who may be committed to its charge by the order of any magistrate or magistrates under the fourteenth section of this act."

It thus appears that, broadly speaking, the charter confers upon the relator the power to receive two classes of children: Those that are intrusted or surrendered, and those that are committed. As to the former, there is no restriction; as to the latter, there is limitation to the three classes of cases provided for by sections 9, 13, and 14. Thus section 9 provides for commitment by a magistrate where children are found destitute in the streets; section 13 for truant children, where the parents have failed to carry out an engagement to enforce attendance of the child at school; and section 14, for children who have deserted their homes, or who keep company with vicious and dissolute characters. A magistrate has thus no power to commit to the relator except for destitution, truancy, or desertion and evil associations. The power of the parent or guardian to surrender or intrust voluntarily, however, is larger, and is dependent only on the mutual consent of the parties thereto, and on the execution of the formal writing provided for by section 8 of the relator's charter. Had it been the legislative intent to limit the cases of voluntary surrender, it would have been a very simple matter to express it. As the provision reads, there is no qualification. The respondent urges that by virtue of the constitution, the rules and regulations of the state board of charities, and the provisions of the Greater New York charter, subdivision 1 of section 7 of the relator's charter has, in effect, been amended to read: Such children as by the consent, in writing, of their parents and guardians, shall be voluntarily surrendered and intrusted to it on the grounds of destitution.

Before considering the scope of these enactments, it may be well at this point to examine the practical question involved in the proper construction to be given them. By section 28 of the relator's charter, the board of supervisors were directed, in each and every year, to levy and collect by tax, and pay over to the relator, $110 per an-

num, and proportionately, for any fraction of a year, for each child which, by virtue and in pursuance of the provisions of the charter, should "be intrusted or committed to the said asylum." This section was substantially re-enacted in subdivision 14 of section 230 of chapter 378 of the Laws of 1897 (the Greater New York charter), whereby the board of estimate and apportionment is directed to include annually in its final estimate: "To the New York Juvenile asylum, one hundred and ten dollars per annum, and proportionately for any fraction of a year, for each child which  *  *  *  shall be intrusted or committed to the said asylum." It is obvious that by virtue of the mandatory provision in section 28 of the charter, directing the application of moneys raised by taxation to a per capita payment for each inmate of the institution, a constitutional limitation was placed on the power to claim such payment for surrendered or intrusted children. Independent of specific provision, and without express restriction in the constitution, there exists, on general principles, the limitation that the money to be raised must be required for some purpose that in some sense at least can be said to be public. Bush v. Board, 159 N. Y. 212, 216, 53 N. E. 1121. Even as to surrendered children, therefore, unless they should have been received on some ground which is the subject of the state's charitable, reformatory, or correctional activities, any payment of public moneys would be unconstitutional. That is, the relator cannot, for any cause sufficient to itself, accept children voluntarily surrendered by their parents and guardians, and obtain for them the per capita payment provided for by legislation. The cause must be in some sense public. Beyond this limitation, however, which, while always existing, has, for cases like those now under consideration, been made more specific, perhaps, by our present constitution (article 8, §§ 11–14), I am unable to find anything, either in that instrument or in existing legislation, to point to a curtailment of the relator's rights and powers.

Section 14 of article 8 of the constitution provides:

"Payments by counties, cities, towns and villages, to charitable, eleemosynary, correctional and reformatory institutions, wholly or partly under private control, for care, support and maintenance, may be authorized, but shall not be required by the legislature. No such payment shall be made for any inmate of such institutions who is not received and retained therein pursuant to rules established by the state board of charities."

Pursuant to this provision, the state board of charities adopted rules, the first one of which related to the reception of inmates in such institutions. The classes that might be received were enumerated. Those of the relator are, to my mind, embraced in the fourth subdivision, providing for "persons who have been received into such institutions as, under special or existing laws or appropriations, are entitled to receive payments of money in gross sum, or for specific purposes, from any county, city, town or village." The relator's inmates were received under existing laws, i. e. its charter and the amendatory legislation thereto. The specific purpose for which it was entitled to receive payments was to defray the expenses of the intrusted or committed children. It appears, therefore, that the four inmates of the relator involved in this proceeding were properly received.

The rules of the state board of charities as to the retention of inmates require that in all cases of destitute children there must be the acceptance in writing by the officer charged with the support of the poor, and that no child, other than a person under 16, who has been committed for crime, shall be retained at public expense, if the state board of charities shall have notified the institution in writing that it is for the interest of such minor that he or she should be returned to his or her parents, or placed out in a family by adoption or indenture. Inasmuch as the four children were not received by the relator on the ground of destitution, and as, concededly, no notification from the state board of charities has been had, it would seem that, to date, those inmates have been properly retained.

But the respondent contends that under the Greater New York charter he, as the commissioner of charities, has not the power to certify to the comptroller that the relator has complied with the rules of the state board of charities. Section 660 of the charter, setting forth the public institutions under the jurisdiction of the charities commissioners, names hospitals, asylums, almshouses, and other institutions devoted to the care of the feeble-minded, the sick, the infirm, and the destitute. These institutions are those belonging to the city of New York, and naturally do not include such as the relator, partly under private control, and which combine the elements of a charitable and correctional institution.

Section 661, however, gives, to the commissioner appointed for the borough in which institutions wholly or partially under private control are situated, certain important powers over them, as a condition precedent to entitling them to payments from the city:

"No payment shall be made by the city of New York to any charitable, eleemosynary or reformatory institution, wholly or partly under private control, for the care, support, secular education, or maintenance of any child surrendered to such institution, or committed to, received or retained therein in accordance with sections six hundred and sixty-four, six hundred and sixty-five, six hundred and sixty-six, and six hundred and sixty-seven of this act, except upon the certificate of the commissioner having administrative jurisdiction that such child has been received and is retained by such institution, pursuant to the rules and regulations established by the state board of charities."

Both from the punctuation of this paragraph and from an examination of sections 664–667, which refer only to "committed" children, it is evident that the practice sanctioned by the relator's charter has not been affected; that the reference to children surrendered contemplates surrender by parent or guardian, as provided for by section 2 of the relator's charter; and that the reference to children committed contemplates "commitment" as heretofore defined, together with such further provisions as are embraced in the four sections mentioned.

I can find no provision that has, directly or indirectly, abrogated or limited the relator's powers, clearly existing under its original charter, to accept by surrender, and to secure payment for, all children which it might receive by commitment. While it may very plausibly be argued that the elaborate provisions as to proceedings before a magistrate for commitment in the case of truancy, for instance, are quite futile if the same object could be accomplished by

simple surrender, it may be answered with equal plausibility that, there being similar detailed provisions as to destitution, no reason exists why that should be made the sole ground of voluntary surrender. Yet it is not disputed by the respondent that in cases of destitution no application to a magistrate is necessary. At most, these criticisms point to legislative defects in the relator's charter and in subsequent legislation, and cannot influence the interpretation of what the law actually is.

It is to be observed, however, that the corrective for any possible abuse exists in the further provisions of section 661:

"Whenever the commissioner shall decide, after reasonable notice to the institution and a hearing, that any such child as aforesaid, who is received and retained in such institution is not a proper charge against the public, and notice of such decision in writing is given by him to such institution, thereupon all right on the part of said institution to receive compensation from the city for the further retention of the child shall cease."

While the commissioner's original jurisdiction is primarily over "charitable institutions" in the narrow sense of the term, he has a certain revisionary jurisdiction over such institutions as the relator, which are partly correctional or reformatory in character. He has the power, on notice, to inquire into the circumstances of the acceptance and retention of any child, whether received by surrender or commitment. If, upon examination, he finds that no grounds for surrender existed in the first instance or have since failed, the institution's right of compensation will cease. The institution is protected from any abuse of power on the part of the commissioner by reviewing his action on certiorari. Section 661. I am of the opinion that relator, having complied with the rules of the state board of charities, was entitled to a certificate to that effect.

Mandamus will issue.